IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMY HANCOCK,<br><br>      Plaintiff,<br><br>v.<br><br>WARDEN SPURLOCK and<br>MEDICAL STAFF,<br><br>      Defendants. | Case No. 24-cv-1210-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Jimmy Hancock, a pretrial detainee who is currently being held at the Pulaski County Detention Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Hancock's Amended Complaint (Doc. 4) alleging constitutional violations involving various aspects of his conditions of confinement at the detention center was dismissed without prejudice for failure to state a claim (Doc. 10).[1] Hancock was granted leave to file a Second Amended Complaint. On July 1, 2024, Hancock filed his Second Amended Complaint (Doc. 19) claiming that officials improperly delayed his medication.

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to

---

[1] Hancock originally filed a Complaint without identifying a defendant (Doc. 1). But prior to the Court conducting a review of his original Complaint, Hancock filed an Amended Complaint.

screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Second Amended Complaint

Hancock makes the following allegations: On June 15, 2024, Hancock received the results of a blood test from Dr. Holly Cleapatia for his platelet levels (Doc. 19, p. 5). Dr. Cleapatia informed Hancock that his platelets dropped by 50%, a drop Hancock contends was due to being prescribed the wrong medication (*Id.*). Hancock has also asked several nurses about the timing of his medications. He alleges that he receives his first dose between 5:30-6:30 a.m. but does not receive his second dose until 9:00-11:00 p.m. (*Id.*). Since March 2024, he has continually asked the nurses about the large gap between doses, but they merely state that they can only distribute the medication as ordered and their hands are tied (*Id.*). Hancock alleges that the time between doses is too long, and it causes his mind to race (*Id.*).

Hancock provides recent examples of his medication distribution. For instance, on June 18, 2024, he received his morning dose at 5:30 a.m., but he did not receive his evening dose until 10:50 p.m. (*Id.*). On June 19, 2024, morning meds were passed out at 7:00 a.m., and the evening dose was distributed at 10:15 p.m. (*Id.*). Hancock lists his doctor as Dr. Holly and his psychiatrist as Dr. Jeff. Hancock alleges that on June 19, 2024, Nurse Amber informed him that he was receiving his medications according to protocol (*Id.*). On June 20, 2024, a new nurse, Nurse Bobby, started passing out medications (*Id.*).

2

On June 21, 2024, Hancock asked Officer Ballwen when he would receive his medication. Ballwen responded that he did not know and did not care (*Id.* at p. 6). Ballwen noted his shift was about to end. Hancock informed Ballwen that he had his first dose at 6:30 a.m., and it was almost 8:10 p.m. (*Id.*). Ballwen said that he did not care. Hancock alleges that he received his medication at 10:15 p.m. (*Id.*).

In addition to issues with his medications, Hancock also requests a soap dispenser for the bathroom, a trashcan, and a separate location to eat his meals (*Id.*). Hancock further notes that he is being held in a "Seventh District" jail when he is from the "Eighth District" (*Id.*).

## Discussion

Simply put, Hancock again fails to state a claim. As a pretrial detainee, Hancock's claims fall under the Fourteenth Amendment, which prohibits all forms of punishment of a pretrial detainee. *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018). The claim involves a two-part analysis. The first inquiry "focuses on the intentionality of the individual defendant's conduct" and "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case." *McCann*, 909 F.3d at 886; *Miranda*, 900 F.3d at 353. The second asks "whether the challenged conduct was objectively reasonable" based on "the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care." *Id. Miranda*, 900 F.3d at 354. Negligence and gross negligence do not support a claim under the Fourteenth Amendment. *Miranda*, 900 F.3d at 353.

3

In the case caption, Hancock identifies only Warden Spurlock and the "medical staff" as defendants in the case. Although Spurlock appears to be the head of the Pulaski County Detention Center, there are no allegations in Hancock's statement of claim suggesting that Spurlock was aware of Hancock's issues with his medications. Further, the case caption merely identifies "medical staff" without pointing to a specific provider. The group is too generic to implicate a specific defendant.

Hancock's statement of claim does identify several medical staff who he saw at the jail. He identifies Dr. Holly Cleapatia, Dr. Jeff, Nurse Amber, Nurse Bobby, as well as Officer Ballwen. But none of these staff members are identified as defendants in the case caption. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Even if Hancock had properly identified these individuals as defendants, he fails to allege that these individuals acted purposefully, knowingly, or recklessly, and he has not properly alleged that their conduct was objectively unreasonable. He merely takes issue with the timing of his medications. He acknowledges that he received his medications, and he received both a morning and evening dose. Although he believes the second dose was too late after the first dose, he fails to allege anything about the medications suggesting that the doses were inappropriate. He fails to identify the medication, how many times a day he is supposed to receive it, or the times he is supposed to take the medication. He acknowledges that Nurse Amber informed him that he was receiving the medication per protocol for the medication (Doc. 19, p. 5). Nothing in the Second Amended Complaint suggests that the distribution of his medication was objectively unreasonable.

Hancock also alleges that he suffered a drop in platelets because he had the *wrong* medication, but again he fails to provide any further allegations suggesting how the medication was inaccurate. He fails to allege anything about his medical condition, the medication he was prescribed, and the medication he was supposed to receive. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (A successful complaint generally alleges "the who, what, when, where, and how…"). He also fails to allege that any of the defendants were responsible for the issues with his medication. He notes that Dr. Holly informed him of his blood results, and Nurses Amber and Bobby passed out medications on June 19 and June 20, respectively. But he acknowledges that he received both doses of the medication on those dates. He also notes that Officer Ballwen said he didn't care when Hancock inquired about his evening dose on June 21, 2024, but Hancock acknowledges that he received an evening dose of the medication on that date (Doc. 19, p. 6). Nothing in the pleading suggests that any defendant acted purposefully or recklessly. Thus, Hancock fails to state a claim as to his medications.

Finally, Hancock alleges that he wants a soap dispenser in the bathroom, a trash can, and a place to eat his dinner, but he fails to allege any factual allegations regarding the conditions of the jail or any defendant's involvement in those conditions. He also alleges that he might be in the wrong jail but fails to allege any constitutional violation implicated by his current placement. Thus, Hancock again fails to state any viable claim in his Second Amended Complaint.

This is Hancock's second attempt to state a viable claim concerning his conditions at Pulaski County Detention Center, and he has been unable to do so. The Court finds

that a further amendment would be futile. His Second Amended Complaint is, thus, **DISMISSED with prejudice**.

## Disposition

For the reasons stated above, Hancock's Second Amended Complaint is **DISMISSED with prejudice** for failure to state a claim. The dismissal counts as one of Hancock's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Hancock is **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed. Therefore, the filing fee remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Hancock wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Hancock does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal, and a motion for leave to appeal *in forma pauperis* must set forth the issues he plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). Moreover, if the appeal is found to be nonmeritorious, Hancock may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  August 26, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**